UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ACCURIDE CORP.,** | ) | **Case No.  1:07 CV 833** |
| | ) | |
| Plaintiff, | ) | **Judge Dan Aaron Polster** |
| | ) | |
| vs. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **FORGITRON, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Plaintiff Accuride Corporation's Motion to Compel Arbitration and to Dismiss or, Alternatively, to Stay Proceedings Pending Arbitration ("Motion to Compel") (**ECF No. 26**).  For the following reasons, the Motion to Compel is **GRANTED** to the extent provided in Section IV below, and the case is **DISMISSED WITHOUT PREJUDICE**.

**I.**

This case arises from a Supply and Services Agreement entered  between Accuride and Defendant Forgitron, LLC, on June 30, 2005 (the "Agreement").[1]  Pursuant to the Agreement, Accuride promised to purchase forged aluminum wheel blanks for certain commercial vehicles from Forgitron in exchange for Forgitron's promise to use commercially reasonable efforts to manufacture and supply those wheel blanks.  The Agreement contains

---

[1] The Agreement is located at ECF No. 15, Ex. B.

pages worth of obligations the parties have undertaken to each other in order to achieve the desired, mutually profitable result. The Agreement also contains a mandatory dispute resolution procedure culminating in binding arbitration to resolve "all claims, disputes and other matters in controversy . . . arising directly or indirectly out of or related to this Agreement, or the breach thereof, whether contractual or non-contractual . . .." *Agreement* § 14. The parties must first make an attempt at informal resolution of their dispute. *Id*. § 14(a). If that fails, they must submit the dispute to non-binding mediation. *Id*. § 14(b). If mediation fails, the parties must submit the dispute to binding arbitration. *Id*. § 14(c). An exception to the Agreement permits Accuride to seek injunctive relief from a court to enforce Forgitron's non-compete obligations under Section 10 of the Agreement.[2] *Id*. § 14(f). In the fall of 2006, the relationship between Accuride and Forgitron broke down irretrievably and the parties terminated the Agreement.

On March 20, 2007, Accuride filed the instant Complaint for Preliminary and Permanent Injunctive Relief asking the Court to enjoin Forgitron's alleged breach of its Section 10 non-compete obligations. Forgitron filed an Answer and Counterclaim, followed shortly thereafter by an Amended Answer and Counterclaim. *Respectively, ECF Nos. 15, 17*. The thrust of Forgitron's Counterclaim is that Accuride induced Forgitron to enter into a contract that Accuride never intended to perform, the purpose for which was to hinder Forgitron's ability to compete in the relevant market. *ECF No. 17*. Relying on this premise, Forgitron asserted against Accuride federal and state antitrust claims (Counts 1-4), declaratory judgment, , breach

---

[2]Notwithstanding the dispute resolution procedures set forth in this Section 14, Accuride shall be entitled to seek injunctive relief, specific performance or other equitable relief pursuant to Section 10(c) and, by agreeing to the dispute resolution procedures in this Section 14, Forgitron acknowledges and agrees that it does not intend to deprive any court of its jurisdiction to issue an injunction to prevent breaches of Section 10, . . .. Agreement § 14(f).

of contract, unjust enrichment and fraudulent inducement claims (Counts 5-8) and various tort claims (Counts 9-12). *Id*. After Forgitron apprised the Court and opposing counsel that it had closed its operations, Accuride agreed to a dismissal without prejudice of its complaint. *See ECF Nos. 20, 21*. Forgitron, however, refused to dismiss its claims against Accuride. In response, Accuride filed the pending Motion to Compel Arbitration, to which Forgitron has filed an opposition brief, *ECF No. 27*, and Accuride has filed a reply, *ECF No. 28*.[3]

Accuride contends that the arbitration provision is valid and enforceable, and that it is broad enough to encompass all of Forgitron's claims. Forgitron argues that the arbitration provision is not supported by consideration; Forgitron did not agree to arbitrate claims that were not mediated; and, at most, the case should be stayed so that mediation before the AAA can proceed and Forgitron can seek interim relief to prevent further anticompetitive conduct.

## II.

The Federal Arbitration Act applies to all contracts reflecting transactions involving interstate commerce, and provides that arbitration provisions in such contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §§ 1, 2. Section 4 of the Act provides in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed in arbitration in accordance with the terms of the agreement . . . .

---

[3]Forgitron recently conducted a sale of its assets. In a teleconference held on August 6, 2007, counsel for Forgitron reported to the Court and opposing counsel that it remains in business solely for the purpose of litigating its Counterclaim.

9 U.S.C. § 4. Section 3 of the Act provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant of the stay is not in default with such arbitration.

9 U.S.C. § 3. The Act, thus, establishes a policy favoring arbitration and requiring that courts "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *see also Allied-Bruce Terminex Companies, Inc. v. Dobson*, 513 U.S. 265, 270 (1995). Arbitration agreements are to be read liberally to effectuate their purpose, and are presumed to be valid and enforceable. *Green Tree Fin. Corp.- Alabama v. Randolph*, 531 U.S. 79, 90 (2000); *Shearson*, 482 U.S. at 226. The party opposing the motion bears the burden of showing that the governing provision is either invalid, or does not encompass the claims at issue. *Green Tree Fin. Corp.*, 531 U.S. at 92.

The Sixth Circuit has articulated the following factors a district court must consider in deciding whether to compel arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). First, the court must determine whether the parties agreed to arbitrate; second, the court must determine the scope of that agreement; third, the court must consider whether Congress determined that any statutory claims are nonarbitrable; and fourth, if some of the claims are nonarbitrable, the court must decide whether to stay the litigation of those claims pending arbitration of the others. *Id*.

**III.**

**A.**

With respect to the first *Fazio* factor, Forgitron has not argued that the parties did not agree to arbitrate their disputes. Rather, Forgitron argues that the arbitration clause is not valid because it is not supported by consideration. According to Forgitron, the arbitration clause

> is part of a larger dispute resolution scheme that was intended to provide the parties with pre-litigation relief in the event that their relationship, *after its inception and after Accuride began purchasing product from Forgitron*, developed problems. It is undisputed, however, that Accuride never purchased a single production wheel from Forgitron. Accuride therefore failed to provide any consideration for Forgitron's purported agreement to arbitrate, so Accuride should not now be permitted to enforce the arbitration provision against Forgitron.

*ECF No. 27*, at 6. This argument lacks merit for several reasons.

First, Forgitron has cited no case law requiring an arbitration clause to have consideration *additional to* that supporting the contract as a whole. In fact, the case law is to the contrary. *See, e.g., Joseph v. MBNA Am. Bank NA*, 148 Ohio App.3d 660, 664 (Ohio App. 8 Dist. 2002) (holding that separate consideration is not a requirement of a valid arbitration clause provided the underlying contract is supported by consideration.).

Second, although a challenge to the validity of an arbitration clause contained in a contract is a matter to be resolved by the Court, a challenge to the validity of the contract as a whole must be decided by an arbiter. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) (*citing Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395 (1967)). Here, the crux of Forgitron's counterclaim is that the Agreement is not supported by consideration (and is thus invalid *ab initio*) because Accuride never purchased, or intended to purchase, a single production wheel blank from Forgitron. That is a challenge to the validity of the contract as a

whole – not to the arbitration clause itself. *Id*.

Third, the Supreme Court has held that an arbitration clause may be severable from the remainder of the contract. *Buckeye Check Cashing*, 388 U.S. 440. Thus, in the absence of a legitimate challenge to the clause itself, it is enforceable regardless of the validity of the rest of the contract. *Id*.

Finally, there is nothing in the Agreement providing that the arbitration clause does not go into effect until after Accuride purchases its first production wheel blank from Forgitron.

**B.**

Next, the Court must determine whether Forgitron's claims are within the scope of the arbitration clause. We begin with the fundamental premise that any ambiguities as to the scope of the arbitration clause must be resolved in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 62 (1995). The Supreme Court has previously held that an arbitration clause using the phrase "any controversy or claim arising out of or relating to this contract or the breach hereof" (almost identical to the one in this case) provides for extremely broad application. *Southland Corp. v. Keating*, 465 U.S. 1, 15 n. 7 (1984) (*citing Prima Paint*, 388 U.S. at 403-04). The Sixth Circuit has held that where an arbitration provision is broad, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude a claim from arbitration, will remove the dispute from consideration by an arbiter. *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.,* 350 F.3d 568, 577 (6th Cir. 2003) (internal quotation marks and citations omitted). In addition, arbitration provisions apply equally to tort and statutory claims that "touch matters" covered by the

contract. *See, e.g., Fazio v. Lehman Bros., Inc.,* 340 F.3d 386, 395 (6th Cir. 2003) (tort claims); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 627 (1985) (statutory claims); *Prima Paint,* 388 U.S. at 403-04 (fraudulent inducement claims).

Forgitron's claims for declaratory judgment, breach of contract, unjust enrichment and fraudulent inducement (Counts 5-8) either arise from or are related to the Agreement. Through these claims, Forgitron seeks a declaration from the Court that Accuride's failure to perform according to the terms of the Agreement excuses Forgitron's performance; damages for breach of the Agreement; invalidation of the Agreement due to fraud in the inducement, and quasi-contractual damages in the event the Agreement is invalidated. Forgitron's tort claims (i.e., tortious interference, unfair competition and spoliation found, respectively, in Counts 9, 11 and 12) are premised on the Agreement and the parties' relationship in the context of the Agreement. Forgitron's state and federal statutory claims (Counts 1-4, 10) are also related to the Agreement. Forgitron claims that Accuride's alleged anti-competitive conduct arose from its false expression of interest in having Forgitron serve as Accuride's aluminum wheel blank provider; its inducement of Forgitron to enter a contract that contained a strong non-compete clause; and its failure to perform under the contract while seeking enforcement of the Agreement's non-compete provision. In short, given the broad language of the arbitration clause and the strong federal policy favoring arbitration, the Court finds that all of Forgitron's claims are within the scope of the Agreement's arbitration provision.

## C.

The third *Fazio* question the Court must decide is whether any of Forgitron's statutory claims are not arbitrable. Forgitron does not argue that any of its statutory claims are

not arbitrable, confining its challenge instead to the validity of the Agreement. The law is clear, however, that arbitration provisions apply liberally to claims that "touch matters" covered by the contract in question, including statutory claims. *See, e.g., Mitsubishi Motors Corp.*, 473 U.S. at 627 (agreement to arbitrate disputes applies to statutory antitrust and unfair competition claims); *Fazio*, 340 F.3d at 395 (agreement to arbitrate disputes applies to securities laws violations). The Supreme Court has noted that there is nothing in the FAA implying a presumption against the arbitration of statutory claims, and there is no reason to distort the process of contract interpretation in order to "ferret out inappropriate claims." *Mitsubishi Motors Corp.*, 473 U.S. at 625-27. Because the burden of proving nonarbitrability is on the party opposing the motion to compel, and because Forgitron has made no argument to the contrary, the Court concludes that Forgitron's statutory claims are arbitrable.

**D.**

Turning now to the last *Fazio* factor, relevant case law indicates that where a contract provides for final and binding arbitration of any disputes arising therefrom, dismissal of the case is an appropriate alternative to staying the case under 9 U.S.C. § 3. *See Dantz v. Apple Am. Group LLC*, 277 F.Supp.2d 794, 805 (N.D. Ohio 2003) (*citing Arnold v. Arnold Corp.*, 925 F.2d 1269 (6th Cir. 1990). Because all of Forgitron's claims are arbitrable, there is no good reason to stay this judicial case and dismissal is appropriate.

Forgitron has made the argument that the Court should not compel the parties to arbitrate its claims because Accuride failed to participate in the mandatory mediation process and, instead, filed a complaint for injunctive relief. In other words, because Accuride filed its complaint for injunctive relief, it has waived the parties' obligation to submit their disputes to

the dispute resolution procedures contained in Sections 14(a) through (c).  However, the Supreme Court has held that any doubts concerning the scope of arbitrable issues, including "an allegation of waiver, delay, or a like defense," should be resolved in favor of arbitration. *Mitsubishi Motors*, 473 U.S. at 626 (*quoting Moses H. Cone Memorial Hosp.*, 460 U.S. 1, 24-25 (1983).  Moreover, Accuride is expressly permitted to seek injunctive relief for any alleged breach of the non-compete provisions of the Agreement under Section 14(f).  And Accuride's filing of a complaint for injunctive relief did not waive Forgitron's obligation to submit its claims, all of which are covered by the arbitration clause, to mediation and, if necessary, arbitration.

### IV.

Based on the foregoing, the Court **GRANTS** the Motion to Compel (**ECF No. 26**) to the following extent.  The parties are hereby directed to comply with the dispute resolution procedure they contractually negotiated.  Because the parties' attempt at informal resolution failed, the Court hereby **ORDERS** the parties to proceed to mediation as set forth in Section 14(b) of the Agreement, and to undertake this obligation in good faith.  Should the mediation prove unsuccessful, the parties are directed to submit the matter to binding arbitration.  Because all of Forgitron's claims are arbitrable, there is no reason to stay this case, which is hereby **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster     August 17, 2007*
**Dan Aaron Polster**
**United States District Judge**